NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0270n.06

No. 15-5894

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WILLIAM A. SPANN, | ) | **FILED** |
|  | ) | May 17, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| ED CARTER, et al., | ) | COURT FOR THE MIDDLE |
|  | ) | DISTRICT OF TENNESSEE |
| Defendants-Appellees. | ) |  |

Before: KETHLEDGE and WHITE, Circuit Judges; COHN, District Judge.[*]

KETHLEDGE, Circuit Judge. Professional hunter William "Spook" Spann sued his former employee and several officers from the Tennessee Wildlife Resources Agency under 42 U.S.C. § 1983 for alleged violations of his constitutional rights during an investigation into his hunting practices. The district court dismissed Spann's suit for failure to state a claim upon which relief could be granted. We affirm.

Spann leads hunting parties on properties around his home in Dickson County, Tennessee, and formerly hosted a hunting program, "Spook Nation," on the Pursuit television network. In 2012, he pled guilty to a federal misdemeanor after shooting a so-called "monster buck" in Kansas without the proper license and then transporting the buck's antlers across state lines. *See* 16 U.S.C. § 3372(a)(2)(A). The federal district court in Kansas sentenced Spann to three years' probation and ordered him not to hunt anywhere in the United States for the next six

---

[*] The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

months. *See United States v. Spann*, 963 F. Supp. 2d 1198, 1200 (D. Kan. 2013). Spann did not obey the order. Instead, a month later, on the opening day of Tennessee's turkey-hunting season, a friend of Spann's posted a photo on Spann's Facebook profile. Spann was dressed in camouflage alongside several other men and a dead turkey. A member of the group commented on the photo, "We had a blast on this hunt with Spook. Can't wait to do it again."

Officers from the Tennessee Wildlife Resources Agency ("Wildlife") and the U.S. Fish and Wildlife Service had anticipated Spann's premature return to hunting. The day before turkey season began, the officers installed several cameras around Spann's properties in Tennessee. These cameras recorded Spann over the following months as he placed scratch feed to bait turkeys, accompanied guests to hunt turkeys, and left the properties with dead turkeys in hand. In June 2013, Spann's probation officer told the district court in Kansas that Spann had violated the terms of his probation. The court ordered that Spann spend 30 days in custody during nights and weekends and barred him from hunting anywhere in the world until August 2014. *Spann*, 963 F. Supp. 2d at 1212. Then, in February 2014, Tennessee charged Spann with several state crimes. In connection with the state investigation, Wildlife officers executed a warrant to search Spann's home and seize his cell phone.

Spann thereafter brought this suit, alleging that the Wildlife officers and his former cameraman violated his Fourth Amendment rights when they installed cameras on his property, and that the same officers violated the Takings Clause when they seized his property from a local taxidermist. The district court held that Spann had failed to state a claim for which relief could be granted. We review that determination de novo. *See Long v. Insight Commc'ns of Cent. Ohio, LLC*, 804 F.3d 791, 794 (6th Cir. 2015).

Spann argues that he pled two different violations of his Fourth Amendment rights. First, he points to his allegation that the defendants "set up several cameras on three of Mr. Spann's private farms without search warrants and without a basis to obtain search warrants[.]" The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Amendment's guarantee is specific to "persons, houses, papers, and effects," and thus prohibits warrantless trespasses to a home and its "curtilage," i.e., the land that immediately surrounds a home. *See Oliver v. United States*, 466 U.S. 170, 180 (1984). In contrast, "no expectation of privacy legitimately attaches to open fields[,]" so officers do not need a warrant to search the undeveloped areas of a farm, even a "highly secluded" one. *Id.* at 174, 180; *see also United States v. Jones*, 132 S. Ct. 945, 953 (2012). Here, Spann alleged that officers trespassed without a warrant on his "private farms," where he purported to have "an expectation of privacy[.]" Yet he has failed to allege how the "private farms" he uses for hunting are any different from other open fields that fall outside the Fourth Amendment's protection. And turkey hunts typically do not take place within a home's curtilage. *See United States v. Carloss*, --- F.3d ---, 2016 WL 929663, at *7 (10th Cir. Mar. 11, 2016). That the officers here used cameras does not transform their surveillance into a search requiring a warrant. *See United States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009).

Spann also alleges that Wildlife officers obtained a warrant in June 2013 to search Spann's home for his cell phone, but failed to execute it. Over six months later, in February 2014, they obtained a new warrant based on the same information, by which time, Spann says,

the probable cause was "stale." To obtain relief, Spann would need to allege facts tending to show that, at the time the defendants executed the warrant, there was no longer a "fair probability" that the evidence sought in the warrant "would still be found" in the place to be searched. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Here, the warrant authorized a search for Spann's cell phone at Spann's home address. The usual place to look for a person's cell phone is in that person's home. *See United States v. Grupee*, 682 F.3d 143, 146-47 (1st Cir. 2012). Spann does not allege any facts to suggest that rule was less applicable to his phone in February 2014 than in June 2013. Spann therefore failed to state a plausible claim that the defendants violated his Fourth Amendment rights.

Spann also argues that he stated a claim against the Wildlife officers under the Fifth Amendment's Takings Clause. Spann alleged in his complaint that the officers "seized all computers, children[']s electronics, cameras and footage" from the home of Spann's other cameraman, and that they "seized property belonging to Mr. Spann from Jones Taxidermy without lawful authority, without a search warrant . . . [and] without compensation[.]" But the Takings Clause does not prohibit the uncompensated seizure of evidence in a criminal investigation, or the uncompensated seizure and forfeiture of criminal contraband. *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006). Here, Spann concedes that all the property in question was taken in connection with criminal investigations. *See* Spann Br. at 20-21. His complaint thus does not state a claim.

The district court's judgment is affirmed.