# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31227

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2017

Lyle W. Cayce
Clerk

MATTHEW EDWARD ALEXANDER,

　　　　Plaintiff – Appellant,

v.

VERIZON WIRELESS SERVICES, L.L.C.,

　　　　Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Matthew Edward Alexander appeals the district court's judgment dismissing his complaint for failure to state a claim against Verizon Wireless Services, L.L.C. under the Stored Communications Act, 18 U.S.C. §§ 2701–2712. The district court adopted the magistrate judge's report and recommendation stating that Verizon is entitled to statutory immunity and a complete defense because it relied in "good faith" on an officer's representations regarding the existence of an emergency. Because we likewise conclude that Verizon acted in good faith, we AFFIRM.

No. 16-31227

I.

In August 2014, around 6:30 a.m., a fire took place at Illie Ray and Christine[1] Nixon's home in West Monroe, Louisiana.[2]  The Nixons put out the fire.  Around 8:45 a.m., the Nixons called the police to report the fire as an arson.  A detective from the Ouachita Parish Sheriff's Department, Gary Gilley, arrived at their home an hour later.  The Nixons told Detective Gilley that they believed Matthew Edward Alexander, a former employee of Mr. Nixon's telecommunications company and someone who had previously brought suit against the company, was responsible for the fire.  Mr. Nixon gave Detective Gilley the make, model, and license plate number of Alexander's car, Alexander's home address, and Alexander's cell phone number, all of which Mr. Nixon had from when his company employed Alexander.

Later that day, at 3:00 p.m., Detective Gilley contacted the Law Enforcement Resource Team at Verizon Wireless Services, L.L.C., the service provider for the cell phone number that Mr. Nixon gave Detective Gilley. Detective Gilley spoke with Andrea Cole, a Verizon representative.  During the conversation, Detective Gilley told Cole that he needed to know where the subscriber to whom the number belonged had been that day, but not the subscriber's current location.[3]  He also mentioned that he was investigating a fire that had been discovered at 6:30 a.m. and that the individual to whom the

---

[1] The magistrate judge's report and recommendation identifies the Nixons as "Ray and Christina Nixon."  The complaint, however, identifies the Nixons as "*Illie* Ray and "Christin*e*." Assuming this was a simple oversight, we use the names provided in the complaint.

[2] Unless otherwise noted, all the facts in this opinion come from Alexander's complaint and are undisputed.

[3] Detective Gilley testified to this effect and gave additional details regarding his conversation with Cole at a suppression hearing held in a later criminal proceeding against Alexander.  Specifically, according to Alexander, Detective Gilley testified that he told Cole that he "needed to know not where (the suspect/Plaintiff) is right now, but where he had been that day."

number belonged was his main lead. Cole told Detective Gilley that, after discussing the alleged arson, she believed the situation met Verizon's guidelines for releasing the information he requested and that she would fax him the appropriate paperwork.

Cole sent Detective Gilley an "Emergency Situation Disclosure" form, which Detective Gilley filled out and returned to her.[4] The form includes a question asking whether the request "potentially involve[s] the danger of death or serious physical injury to a person, necessitating the immediate release of information relating to the emergency." In response, Detective Gilley checked the box next to "yes." In a box for additional comments, Detective Gilley wrote: "This case is in connection with an <u>Arson</u>, House was set on fire with victims inside." Detective Gilley included his name, badge number, contact information, and title as a "Senior Investigator" with the Ouachita Parish Sheriff's Department. Moreover, he signed the form under a certification stating as follows: "I certify that the foregoing is true and correct and understand that Verizon Wireless may rely upon this form to make an

---

[4] The "Emergency Situation Disclosure" form was not attached to Alexander's complaint but was instead submitted to the district court as an exhibit to Verizon's motion to dismiss and then used by Alexander as an exhibit to his response to the motion to dismiss. In her report and recommendation, the magistrate judge considered the completed form, which had been cited by both parties. Neither party objected to the court's consideration of the form. Typically, at the 12(b)(6) stage, the court is confined to the complaint. *See* Fed. R. Civ. P. 12(d). Nonetheless, because the form was repeatedly referenced in Alexander's complaint, is central to Alexander's claims, and was submitted to the court by *both* parties, it was appropriate for the magistrate judge to consider it, and we do the same here. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim."); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

No. 16-31227

emergency disclosure to my law enforcement agency or governmental entity pursuant to 18 U.S.C. § 2702(b)(8) and § 2702(c)(4)."

After receiving the completed form, Verizon provided Detective Gilley with the requested information. This included the identity of the subscriber, location information, incoming and outgoing call details, and SMS[5] details. The time period spanned by these records was, as requested by Detective Gilley, from three days before the date of the incident to the "present time," which was interpreted by Verizon as the time the records were sent around 4:15 p.m. that day. All of the information received from Verizon was non-content information.[6]

Based in part on the information from Verizon, Alexander was arrested and charged with aggravated arson and two counts of attempted second degree murder.[7] In the criminal proceeding, Alexander moved to suppress the cell phone records obtained from Verizon. A state trial judge granted Alexander's motion, finding that there were no exigent circumstances justifying Detective

---

[5] SMS is an acronym for "short message service." Peter DiCola & David Touve, *Licensing in the Shadow of Copyright*, 17 Stan. Tech. L. Rev. 397, 421 (2014). SMS is the way in which a text message is typically transmitted. *See generally* John Naughton, *Now 4 Billion People Know the Joy of Txt*, Guardian (May 5, 2012), https://www.theguardian.com/technology/2012/may/06/sms-text-messages-20th-birthday.

[6] Non-content information includes "a record or other information pertaining to a subscriber to or customer of [an electronic communication] service" but does not include the contents of any communications. 18 U.S.C. § 2702(a)(3), (c); *see also* 18 U.S.C. § 2703(c). We have held, for example, that cell-site information is non-content information, while the contents of an email or a call is content information. *See In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 607, 611–12 (5th Cir. 2013) ("[T]he historical cell site information reveals his location information for addressing purposes, not the contents of his calls.").

[7] The exact offenses with which Alexander was charged and the fact that Alexander also filed a civil lawsuit against Detective Gilley and two other officials from the Ouachita Parish Sheriff's Department were included in Alexander's disclosure of collateral proceedings pursuant to local rule 3.1 of the Local Rules for the United States District Court for the Western District of Louisiana. *See* W.D. La. L.R. 3.1. This disclosure was filed with Alexander's complaint. *See id.*

No. 16-31227

Gilley's actions in obtaining the records without a warrant. Alexander's criminal proceeding is ongoing.[8]

Proceeding *pro se*, Alexander filed a lawsuit against Verizon in federal district court, alleging various violations of the Stored Communications Act (SCA), 18 U.S.C §§ 2701–2711, and seeking $5,000,000 in damages. Verizon filed a motion to dismiss for failure to state a claim upon which relief can be granted. The motion was referred by the district court to a magistrate judge. After the motion was fully briefed, the magistrate judge issued a report and recommendation in which the judge recommended that the motion be granted. The magistrate judge concluded that, taking all of the facts in Alexander's complaint as true, Alexander's complaint establishes on its face that Verizon is statutorily immune from liability and further entitled to a "good faith reliance" affirmative defense. As such, the magistrate judge concluded that dismissal was proper. The report and recommendation also warned in bolded all caps that a party's failure to timely object to the report would bar that party, except on grounds of plain error, from attacking any unobjected-to portions of the report accepted by the district judge on appeal. Alexander did not file any written objections, and the district court dismissed Alexander's lawsuit with prejudice. Alexander timely appealed the district court's judgment.[9]

---

[8] We hereby grant Verizon's request that we take judicial notice, pursuant to Federal Rule of Evidence 201, of a copy of the docket in Alexander's criminal proceeding and a motion he filed in that proceeding. Alexander does not oppose Verizon's request. These two documents, however, do not affect our analysis.

[9] Alexander also filed a motion for relief from judgment under rule 60 of the Federal Rules of Civil Procedure, which the district court construed as a motion to alter or amend the judgment under rule 59(e). The district court denied Alexander's motion, and Alexander did not appeal the district court's ruling.

No. 16-31227

## II.

When a party who is warned of the requirement to file timely objections to a magistrate judge's report and recommendation fails to file any such objections, and the magistrate judge's factual findings and legal conclusions are accepted by the district court, our review is for plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded on other grounds by* 28 U.S.C. § 636(b)(1). When, however, the district court undertakes an independent review of the record, our review is *de novo*, despite any lack of objection. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). "This exception to the usual plain-error standard is especially relevant in the context of *pro se* cases."[10] *Fogarty v. USA Truck, Inc.*, 242 F. App'x 152, 154 (5th Cir. 2007) (unpublished)[11] (citing *Douglass*, 79 F.3d at 1430).

The district court here stated in its judgment that it found the magistrate judge's report and recommendation to be "supported by the law and the record in this matter." We have held that similar statements, while potentially "judicial boilerplate," indicate that the district court conducted an independent review of the record. *Guillory*, 434 F.3d at 308 n.5 (reviewing the district court's decision *de novo* where it stated: "Alternatively, an independent review of the record has led this court to conclude that the proposed findings and conclusions are entirely correct."); *see also Hatcher v. Bement*, 676 F. App'x 238, 241–42 (5th Cir. 2017) (unpublished) ("The district court explicitly stated

---

[10] While we construe briefs of *pro se* litigants liberally and apply less stringent standards to *pro se* litigants, "*pro se* parties must still brief the issues and reasonably comply with the standards of [Federal Rule of Appellate Procedure 28]." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

[11] Pursuant to Fifth Circuit Rule 47.5.4, unpublished opinions issued on or after January 1, 1996 generally are not precedent, although they may be cited as persuasive authority pursuant to Federal Rule of Appellate Procedure 32.1(a).

No. 16-31227

that it had made 'an independent review of the pleadings, files, and records in this case,' and, accordingly, even if [the party whose motion was denied] did not file specific written objections, we review the district court's decision de novo."). As such, our review here is *de novo*.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we apply the same standard as does the district court: A claim will not be dismissed unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006). We take all factual allegations as true and construe the facts in the light most favorable to the plaintiff. *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017). "Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Id.* (quoting *EPCO Carbon Dioxide*, 467 F.3d at 470).

III.

This case does not concern whether the information obtained by Detective Gilley from Verizon can be used against Alexander in any criminal proceeding against him. The state trial court already resolved that question in Alexander's favor. Instead, we are faced with the question of whether Alexander can recover against Verizon through a civil lawsuit under the SCA.

The SCA governs the privacy of stored electronic (also referred to as Internet[12]) communications in the United States. *See In re U.S. for Historical*

---

[12] Although many style guides, such as the Chicago Manual of Style, and news sources, such as the Associated Press, no longer instruct writers to capitalize "Internet," we decline to follow this trend. *See, e.g.*, The Chicago Manual of Style Online § 7.80 (17th ed. 2017); AP Stylebook (@APStylebook), Twitter (Apr. 2, 2016, 8:00 AM), https://twitter.com/apstylebook /status/716279065888563200?lang=en ("We will lowercase internet effective June 1, when the 2016 Stylebook launches."). For many, such as the New York Times, the reason for the change to "internet" is simple: others were doing it, so they thought they should, too. Philip B. Corbett, *It's Official: The 'Internet' Is Over*, N.Y. Times (June 1, 2016), https://www.nytimes

No. 16-31227

*Cell Site Data*, 724 F.3d 600, 606 (5th Cir. 2013) ("The SCA regulates disclosure of stored electronic communications by service providers."); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L. Rev. 1208, 1208 (2004) ("The privacy of stored Internet communications in the United States is governed by a federal statute known as the Stored Communications Act ('SCA')."). Congress passed the SCA as part of the Electronic Communications Privacy Act (ECPA). Kerr, *supra,* at 1208. Generally, the SCA (1) prohibits unauthorized access to certain electronic communications, *see* 18 U.S.C. § 2701; (2) restricts service providers from voluntarily disclosing the contents of customer communications or records to certain entities and individuals, *see id.* § 2702; and (3) permits a governmental entity to compel a service provider to disclose customer communications or records in certain circumstances, *see id.* § 2703.

Section 2707(a) creates a cause of action for any person aggrieved by a violation of the SCA. *Id.* § 2707(a). Section 2707(a) states:

> Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of [the SCA] in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

---

.com/2016/06/02/insider/now-it-is-official-the-internet-is-over.html. "Internet," however, was originally capitalized to distinguish the global network from other internets—short for "inter-networks"—which are collections of smaller networks that communicate using the same protocols. Adam Nathaniel Peck, *Stop Capitalizing the Word Internet*, New Republic (July 28, 2015), https://newrepublic.com/article/122384/stop-capitalizing-word-internet. In our view, this still makes the word a proper noun, regardless of how often people refer to other internets. Furthermore, to the extent "decapitalizing [I]nternet is part of a universal linguistic tendency to reduce the amount of effort required to produce and process commonly-used words," we reject the tasks of striking an additional key or reading over a capital "I" as persuasive reasons to alter a word. Susan C. Herring, *Should You Be Capitalizing the Word 'Internet'?*, Wired (Oct. 19, 2015), https://www.wired.com/2015/10/should-you-be-capitalizing-the-word-internet/.

No. 16-31227

*Id.* Section 2703(e), the exception referenced at the beginning of § 2707(a), states:

> No cause of action shall lie in any court against any provider of wire or electronic communication service . . . for providing information, facilities or assistance in accordance with the terms of a . . . statutory authorization . . . under [the SCA].

*Id.* § 2703(e). Thus, § 2703(e) provides immunity to a service provider when it makes a disclosure in accordance with a provision of the SCA. *See In re a Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 855 F.3d 53, 55 n.2 (2d Cir. 2017) ("[Section 2703(e)] gives a provider immunity from civil liability for a voluntary production . . . made 'in accordance with a statutory authorization under [the SCA].'" (quoting 18 U.S.C. § 2703(e))); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1180 (9th Cir. 2013) ("[W]here a provider . . . discloses basic subscriber information to the government 'in accordance with the terms of a subpoena' . . . the provider is immune from suit." (quoting 18 U.S.C. § 2703(e))).

A second provision of the SCA provides additional protection to service providers who follow the terms of a statutory authorization in the form of a complete defense. Section 2707(e) states:

> A good faith reliance on (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a *statutory authorization* . . . is a complete defense to any civil or criminal action brought under [the SCA] or any other law.

18 U.S.C. § 2707(e) (emphasis added). One such statutory authorization—the one relevant in this case—states:

> A [service] provider . . . may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by subsection (a)(1) or (a)(2) . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency . . . .

9

*Id.* § 2702(c). We refer to this as the "emergency exception."

Here, Alexander challenges the district court's determination that Verizon is protected from liability under sections 2703(e) and 2707(e) based on the emergency exception.[13] Alexander argues generally that the information provided by Detective Gilley to Verizon regarding the alleged emergency lacked enough specificity for Verizon's reliance on it to be in good faith. Alexander also faults Verizon for failing to take additional steps to challenge Detective Gilley's assessment of the situation as an "emergency." The fact that Detective Gilley successfully filled out a form, in Alexander's view, is not enough.

In Verizon's view, the SCA allowed Verizon to rely in good faith on Detective Gilley's written representations, and Alexander has no factual allegations that could plausibly show Verizon acted in bad faith. Verizon also argues that asking its representatives to question the emergency assessments of police officers is inconsistent with the statute and its design.

The term "good faith" appears twice in the provisions relevant to this case. First, for a provider to qualify under the emergency exception, the provider must "*in good faith*, believe[] that an emergency involving danger of

---

[13] Alexander raises a total of five issues on appeal: (1) whether § 2702(c)(4) is unconstitutionally broad; (2) whether application of § 2702(c)(4) in this case violates the Fourth Amendment; (3) whether § 2703(e) and § 2707(e)(1) violate Alexander's due process rights; (4) whether the services providers referenced in § 2703(e) and § 2707(e)(1) should be afforded absolute immunity from civil lawsuits; and (5) whether a member of a service provider can be subject to suit under 42 U.S.C. § 1983. Only the fourth of these issues was raised in the district court, and it is therefore the only issue we now consider. *See Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) ("Although . . . the record is reviewed *de novo*, this court will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion."); *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) ("Generally, we do not consider issues on appeal that were not presented and argued before the lower court."); *see also Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4) (emphasis added). A good faith belief in the existence of an emergency is therefore required for § 2702(c)(4) to qualify as the "statutory authorization" for § 2703(e)'s grant of immunity. Second, "good faith reliance" on this statutory authorization is required to trigger § 2707(e)'s "complete defense"— insulating the emergency exception in a second analytical layer of "good faith." *Id* § 2707(e).

"Good faith" is not defined by the SCA. Moreover, courts examining § 2707(e) have differed on whether "good faith" should be determined using an objective or a subjective test. *See generally* Robert D. Brownstone & Tyler G. Newby, Data Sec. & Privacy Law § 9:30 (2017). Only three circuits have weighed in on the issue: the Seventh, Ninth, and Tenth Circuits. *See Sams*, 713 F.3d at 1180; *McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006); *Davis v. Gracey*, 111 F.3d 1472, 1484 (10th Cir. 1997). As such, this is an issue of first impression in our circuit.

The Seventh and Tenth Circuits, on the one hand, have supported an objective approach. In *McCready*, the Seventh Circuit looked only to the subpoena at issue to determine that eBay's compliance with the subpoena was in good faith. 453 F.3d at 892. Similarly, in *Davis*, the Tenth Circuit held that "[t]o be in good faith, the officers' reliance must have been objectively reasonable." 111 F.3d at 1484. Because the warrant was valid and encompassed the seized equipment, the court concluded that the officers' reliance was objectively reasonable. *Id.*

The Ninth Circuit, on the other hand, more recently examined § 2707(e)'s "good faith reliance" defense and determined that it "should contain both an objective and subjective element." *Sams*, 713 F.3d at 1180. In so holding, the court agreed with the general approach taken by the federal district court in

11

*Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638, 647–48 (E.D. Va. 2004), but created its own test.[14]  *Id.* at 1180–81.  In *Freedman*, the district court noted that the available authority at that time supported an objective test for § 2707(e), yet concluded that the more appropriate test was a two-pronged standard used in cases interpreting a "nearly identical" provision under the ECPA: 18 U.S.C. § 2520(d).  325 F. Supp. 2d at 647–49; *see also Fox v. CoxCom Inc.*, 2012 WL 6019016, at *3 (D. Ariz. Dec. 3, 2012) (also applying the § 2520(d) two-pronged standard).

Section 2520(d), which is housed in a chapter of Title 18 dealing with wire and electronic communications interception, establishes, in nearly identical fashion to § 2707(e), that "[a] good faith reliance on . . . a statutory authorization . . . is a complete defense against any civil or criminal action brought under this chapter or any other law."  18 U.S.C. § 2520(d).  The *Freedman* court turned to the Ninth Circuit's decision in *Jacobson v. Rose*, 592 F.2d 515 (9th Cir. 1978), for the § 2520(d) "good faith" standard.  325 F. Supp. 2d at 647–48.  In *Jacobson*, the Ninth Circuit acknowledged that § 2520 does not define "good faith" and, with guidance from the Senate Report on the unamended version of § 2520, applied the good faith defense allowed in 42 U.S.C. § 1983 cases to the § 2520 context.  592 F.2d at 523.  Applying that formula, the Ninth Circuit held that "a defendant may invoke the defense of good faith reliance on a court order only if he can demonstrate (1) that he had a subjective good faith belief that he acted legally pursuant to a court order;

---

[14] The Ninth Circuit held that "the good faith defense under 18 U.S.C. § 2707(e) is met when the defendant complies with a subpoena (or other process detailed in § 2707(e) of the SCA) that appears valid on its face, in the absence of any indication of irregularity sufficient to put the defendant on notice that the subpoena may be invalid or contrary to applicable law.  A defendant may *not* benefit from the good faith defense, however, if the defendant *actually knew* that the subpoena (or other process) was invalid under the applicable law." *Sams*, 713 F.3d at 1180–81.

and (2) that this belief was reasonable." *Id.* This was the standard applied by the *Freedman* court and modified in *Sams*. *See Sams*, 713 F.3d at 1180–81; *Freedman*, 325 F. Supp. 2d at 648.

Looking to the Seventh and Tenth Circuits' decisions or to the history behind the Ninth Circuit's decision in *Sams* leads us to the same conclusion— an objective standard should be used in determining "good faith" under § 2702(c)(4) and § 2707(e) of the SCA. Although the Ninth Circuit in *Sams* did not adopt the *Freedman* court's articulation of the good faith test, it agreed with the *Freedman* court that the test should contain both an objective and a subjective element. 713 F.3d at 1180. The *Freedman* court, in turn, looked to the § 2520 good faith test, which the Ninth Circuit had previously defined as the § 1983 good faith test. 325 F. Supp. 2d at 647–48. Indeed, at that time, the good faith test applied in § 1983 cases was a combined objective plus subjective standard. *See Pierson v. Ray*, 386 U.S. 547, 557 (1967) (holding that a good faith defense applies if the defendant held a subjective belief that was objectively reasonable that he was acting legally). This, however, is no longer the case. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (holding that the relevant question in § 1983 cases is an objective one, in which "subjective beliefs . . . are irrelevant"). Consequently, this line of reasoning for an objective plus subjective approach in the context of the SCA lacks support and, in fact, points towards an objective approach.

We have held that the "qualified" or "good faith" immunity that public officials whose positions entail the exercise of discretion enjoy is axiomatic in § 1983 cases. *Saldana v. Garza*, 684 F.2d 1159, 1162–63 (5th Cir. 1982). The qualified immunity doctrine originally was developed to protect law

enforcement officials against civil suits stemming from either a *Bivens*[15] or a § 1983 claim.    John D. Kirby, Note, *Qualified Immunity for Civil Rights Violations: Refining the Standard*, 75 Cornell L. Rev. 462, 462 (1990).  In both contexts, the standard we apply is an objective one.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–15 (1982); *Anderson*, 483 U.S. at 641.  The reason for this, as the Supreme Court has explained, is that it strikes the right balance between competing values: providing a recourse for the vindication of constitutional guarantees while minimizing social costs, "including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."  *Anderson*, 483 U.S. at 638.

Similarly, in the Fourth Amendment context, the Supreme Court has created good faith exceptions to the exclusionary rule.  "The exclusionary rule is a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution."  *United States v. Wallace*, 866 F.3d 605, 609 (5th Cir. 2017) (quoting *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010)).  "As such, courts have carved out exceptions for police conduct 'pursued in complete good faith' because the rule's 'deterrence rationale loses much of its force' in such circumstances."  *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)).  Two such exceptions are when an officer relies in "good faith" on a statute or on a warrant.  *See Illinois v. Krull*, 480 U.S. 340, 349 (1987); *Leon*, 468 U.S. at 922.  In both circumstances, the good faith test is purely an objective one.  *Illinois*, 480 U.S. at 355.

---

[15] In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that an individual whose right to freedom from unreasonable search and seizure is violated by federal agents has a private cause of action against those agents.  403 U.S. at 396–97.

No. 16-31227

Accordingly, we apply an objective standard to the good faith requirements found in § 2702(c)(4) and § 2707(e)(1) of the SCA and ask if Verizon's conduct was objectively reasonable. We find that this approach is consistent with the opinion of two other circuits and finds support in the reasoning of the third circuit to have considered the issue thus far. Furthermore, this approach strikes the right balance between providing a recourse for subscribers whose rights under the SCA have been violated and minimizing social costs, including the risk that fear of monetary liability and harassing litigation will unduly inhibit the willingness of Internet service providers voluntarily to help government officials in times of emergency.

Here, taking all factual allegations as true and construing the facts in the light most favorable to Alexander, Verizon acted in an objectively reasonable manner.[16] It is undisputed that Verizon only released the non-content information tied to Alexander's cell phone number after it received a signed and certified form indicating that the request involved: (1) "the danger of death or serious physical injury to a person, necessitating the immediate release of information relating to that emergency," (2) an alleged arson, and (3) victims who were within the home when it was set on fire. Moreover, the government official who submitted the form, Detective Gilley, listed identifying information, such as his badge number and title as a senior investigator with the Ouachita Parish Sherriff's Department, making it reasonable for Verizon to rely on its contents. Equipped with this form, Verizon acted reasonably in concluding that there was "an emergency involving danger of death or serious physical injury to [a] person" that required

---

[16] We note that, even if we were to incorporate a combined objective and subjective approach to the good faith determination in this case, we would reach the same conclusion that Verizon is statutorily immune from liability.

Verizon to act without delay, in satisfaction of § 2702(c)(4). An affirmative defense is therefore established on the face of Alexander's complaint.

We also do not find persuasive any argument that Detective Gilley's conversation with Cole made Verizon's subsequent reliance on the form unreasonable. First, although Detective Gilley did state that he did not need the subscriber's current location and that the fire had occurred several hours earlier, these statements in themselves, even assuming Cole ultimately released the records or communicated this information to the person who did, do not preclude the fact that the situation was an emergency. *See, e.g.*, *Registe v. State*, 734 S.E.2d 19, 21 (Ga. 2012) (concluding that a provider believed in good faith that disclosure under § 2702(c)(4) was appropriate where the provider "received information directly from police that its records could help identify an at-large suspect of a double homicide committed within a day of the request and that the suspect presented a present and immediate danger"). Second, with respect to Cole's comment that Detective Gilley's initial statements met Verizon's "guidelines," this statement has little effect on the analysis, since it is undisputed that no records were actually released until after Verizon received the completed "Emergency Situation Disclosure" form. Third, and most important, the situation could have changed between the time Detective Gilley spoke with Cole and the time when he submitted the form to Verizon. Verizon was not required to verify Detective Gilley's representations, certified as "true and correct," in order to release Alexander's records under § 2702(c)(4). As a result, Verizon is protected from liability under the SCA or any other law for releasing Alexander's records both by the immunity provided by § 2703(e) and the complete defense created by § 2707(e)(1).

As a final note, we address Verizon's argument that Alexander has not sufficiently pleaded bad faith, a supposed "element of the cause of action under section 2707(a)." Verizon seems to support the existence of a bad faith element

No. 16-31227

to Alexander's cause of action with a recitation of the subjective component of the Ninth Circuit's good faith test in *Sams*. As already discussed, however, the test we adopt today does not have a subjective component, nor do we agree that bad faith is an element of the cause of action under § 2707(a).

Along the same lines, Verizon argues that Alexander failed to plead facts "to show why Verizon had a motive to violate the statute." Again, this is not a requirement. The plain language of § 2707(a) requires, to establish a claim, that "*the conduct* constituting the violation is engaged in with a *knowing or intentional* state of mind." 18 U.S.C. § 2707(a) (emphasis added). Verizon argues, under §2707(a), that "the *violation*, not just the act of the disclosure, [needs to] be knowing and intentional" and cites to *Long v. Insight Communications of Central Ohio, LLC*, 804 F.3d 791 (6th Cir. 2015), in support.

In *Long*, while the Sixth Circuit acknowledged that it is "the conduct constituting the violation" that must have been knowing or intentional, it defined the relevant conduct as the violation itself—"that [the provider] 'knowingly' divulged plaintiffs' subscriber information without authorization" in violation of 18 U.S.C. § 2702. 804 F.3d at 797; *see also* 18 U.S.C. § 2702(a)(3) (prohibiting providers from "knowingly" divulging records or other information pertaining to a subscriber to a governmental entity). According to the Sixth Circuit, the most natural reading of § 2707(a) "requires a showing that the provider knew not only that it was divulging information (*i.e.*, that the act of disclosure was not inadvertent), *but also* what information was being divulged (*i.e.*, the facts that made the disclosure unauthorized)." *Long*, 804 F.3d at 797 (emphasis added). The Sixth Circuit thus essentially collapsed the phrase "the conduct constituting the violation" into two words: the violation.

Nonetheless, as the *Freedman* court noted with respect to § 2702, "to make a disclosure violation turn on whether [the provider] acted with a bad

17

faith intent to violate the statute would render the statute's good faith defense provision superfluous, an impermissible result under the well-established rule 'that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" 325 F. Supp. 2d at 646–47 (footnote omitted) (citing *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

We agree with the *Freedman* court that to make a disclosure violation turn on whether the provider knew they were acting "without authorization" would render § 2707(e)'s "good faith reliance on a statutory authorization" defense superfluous. This is an unacceptable result. *See United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) (recognizing that "one of the most basic interpretive canons" is that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)). Thus, with respect to the SCA, a provider acts "knowingly" if it has knowledge of the factual circumstances (*i.e.*, divulging records or other information pertaining to a subscriber to a governmental entity) that constitute the alleged offense and "intentionally" if its acts are not inadvertent. *See, e.g.*, *Freedman*, 325 F. Supp. 2d at 645–46.

IV.

On the above grounds, we AFFIRM the district court's judgment dismissing Alexander's lawsuit against Verizon Wireless Services, L.L.C. with prejudice.

18