# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2022

Lyle W. Cayce
Clerk

No. 21-50912

Carnegie Technologies, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Triller, Incorporated,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-271

Before Higginbotham, Haynes, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

What began as a relatively straightforward sale of one company, Triller, Inc. (Triller), by a group of owners that included another company, Carnegie Technologies, L.L.C. (Carnegie), has ended as a tangled dispute between Carnegie and Triller over a promissory note Triller executed in favor of Carnegie and then immediately assigned to a group of "legacy" owners—including Carnegie—as part of the deal's closing. After the note was defaulted, Carnegie sued Triller to collect the amounts due. Triller countered that because its obligations under the note had been assigned, resulting in a novation, Triller was excused from further liability. The district

court disagreed, finding that Carnegie had demonstrated the validity of the note and that the note was in default, and rejected Triller's novation defense. We agree based on the record before us that Triller remained liable under the note to Carnegie, so we affirm.

## I.

## A.

In 2019, Triller, a social media company that owns the Triller internet application, was owned by an investment group that included Carnegie. In addition to being an owner of Triller, Carnegie also provided human resources, accounting, and tax services to Triller under an Administrative Services Agreement (the ASA). Triller rarely paid for those services, instead recording them as liabilities in its internal recordkeeping. On October 8, 2019, Triller was sold by Carnegie's investment group to Triller HoldCo, LLC (HoldCo). HoldCo's ownership was divided between the majority stakeholder, an investment group headed by Proxima Media, LLC (Proxima), and the minority-shareholder Triller Legacy, LLC (Legacy). Legacy was owned by Carnegie and the original investment group.

The day the transaction closed, Triller executed a Promissory Note in favor of Carnegie (the Note). The Note memorialized the debts that Triller had incurred under the ASA. The Note provided that Triller would repay a principal amount of $4,280,109, as well as interest accruing at ten percent per annum. It carried a due date of October 8, 2021. It also provided that if Triller failed "to make any required payment of principal, accrued interest or any other amount under this Note when due and payable," or if Triller materially failed to comply "with any of its obligations, agreements and covenants" contained in the ASA, then Triller would be deemed to have defaulted on the Note. In the event of default, Carnegie was permitted to accelerate payment of the unpaid principal and accrued interest.

No. 21-50912

Triller immediately assigned the Note to Legacy through an Assignment Agreement (the Assignment). The Assignment recited the principal and interest due to Carnegie and stated that it was Triller's desire "to assign, transfer, and convey the Note in its entirety to [Legacy]." It further stated that Legacy assumed the Note "subject to all of the obligations set forth in the Note." Legacy "expressly assum[ed] all such rights, obligations, liabilities and duties of [Triller] arising with respect to the Note and agree[d] to perform any and all unperformed obligations of [Triller] under and pursuant to the Note." Additionally, the parties agreed that the Assignment would be "governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California, without regard to its choice of law principles."

The Assignment was signed by Mike Lu, the Chief Executive Officer of Triller, and Paul Posner, the Chief Executive Officer of both Legacy and Carnegie. Posner signed twice, once for Legacy as the assignee and once for Carnegie as acknowledging and agreeing to the Assignment. The Assignment provided that it was "the final expression of, and contain[ed] the entire agreement between, the parties with respect to the subject matter hereof and supersede[d] all prior understandings with respect thereto."

**B.**

In March 2020, Carnegie brought suit against Triller in the Federal District Court for the Western District of Texas. It alleged that Triller had breached the ASA by not paying Carnegie for the ongoing services it had provided Triller. Carnegie also alleged that, because breach of the ASA constituted default under the Note, Triller had defaulted on the Note and payment of the Note was immediately due. In lieu of answering Carnegie's complaint, Triller filed a motion to dismiss under Federal Rule of Civil

No. 21-50912

Procedure 12(b)(6).[1] It asserted that Carnegie had failed to state a claim upon which relief could be granted because the Note, and any liability for it, had been assigned to Legacy.

The district court denied Triller's motion, finding that Carnegie had sufficiently pled a default under the Note and that Triller had not established its affirmative defense of novation[2] as a matter of law. Specifically, after evaluating the requirements for an effective novation under Texas and California law, the district court determined that the two documents Triller attached to its motion, the Assignment and the purchase agreement conveying Triller to HoldCo, did not establish the necessary elements because they were silent regarding any intent to release Triller of its liability under the Note. Observing that "[t]he critical distinction between assignment and novation is the intent to completely release the original obligor of its obligations under the original contract[,]" the court concluded that Triller had offered no evidence bearing on Carnegie's intent in acknowledging the assignment.

---

[1] In April 2020, Triller served a demand for arbitration on Legacy, Carnegie, and the other members of Carnegie's investment group. The demand alleged fraud on the part of the parties selling Triller based on material misrepresentations to Triller's purchasers regarding elements of Triller's business. Triller also filed a motion to compel arbitration in this case in November 2020, but it was denied by the district court. Triller has not raised any appellate argument related to that denial, so we do not address it. *Luminant Mining Co., L.L.C. v. PakeyBey*, 14 F.4th 375, 378 n.1 (5th Cir. 2021) (citing *In re Southmark Corp.*, 163 F.3d 925, 934 n.12 (5th Cir. 1999).

[2] A novation is generally defined as "[t]he act of substituting for an old obligation a new one that either replaces an existing obligation with a new obligation or replaces an original party with a new party." *Novation*, Black's Law Dictionary (11th ed. 2019).

4

No. 21-50912

Three weeks after the court denied Triller's motion, Carnegie filed a motion for summary judgment. Carnegie reiterated the contentions in its complaint, asserting that Triller was in breach of the ASA, such that the Note was also in default. Carnegie emphasized that the Assignment contained no provisions that absolved Triller of liability under the Note.

Triller responded that Carnegie's motion was premature due to a dearth of discovery. Triller also reiterated its position that the Assignment absolved it of liability under the Note. In support, Triller offered declarations from Lu, John Flock, a Triller board member and the Chief Operating Officer of Proxima, and Evan Lee, an attorney who represented HoldCo in the sale of Triller.[3] Lu averred that

> [b]ased on [his] understanding of the day-to-day negotiations of the material terms of the transactions leading to the Triller Sale, the Triller Sale transaction was at all times contemplated and intended to be a takeover of Triller on a debt-free basis, and that all debt of Triller would be either paid off or forgiven, including but not limited to the debt evidenced by the Promissory Note.

He also stated that at closing, Carnegie's attorneys made representations "orally and in writing . . . that the Closing Documents reflected and memorized [sic] a takeover of Triller on a debt-free basis, and that all debt of Triller would be either paid off or forgiven, including but not limited to the debt evidenced by the Promissory Note."

Flock echoed Lu's declaration. Flock stated that he participated in the negotiation of the Triller sale and that Lee told him that Carnegie's

---

[3] Triller did not make any argument related to its alleged breach of the ASA.

attorneys had represented that "Triller's liability under the Promissory Note would be wholly extinguished following the Closing."

Lee said much the same:

> Based on my discussions and communications with the parties to the transaction, it was my understanding that the Triller Sale was at all times contemplated and intended to be a takeover of Triller on a debt-free basis, and that all debt of Triller would be either paid off or forgiven, including but not limited to the debt evidenced by the Promissory Note.

Lee added that shortly before closing, he was contacted by Carnegie's attorneys who wanted to restructure the transaction to create the Note. Lee detailed that Carnegie's counsel "assured me during these conversations that this change in structure would not affect the ultimate goal of extinguishing Triller's liability pursuant to the Promissory Note." Lee described the Note as a "last-minute change" done "as a favor to Carnegie to permit Carnegie . . . to be repaid by Legacy the amounts owed under the [Note] *before* any distributions were issued to Legacy's members, who were the previous members of Triller and had therefore benefitted from the services Carnegie . . . had provided free of charge."

The district court held that Carnegie was entitled to judgment on its claim that Triller breached the ASA. The court then concluded that Carnegie had also proven the elements necessary to enforce the Note under both Texas law, the forum for the suit, and California law, the law controlling the interpretation of the Assignment. Finally, the court addressed Triller's novation defense.[4] Considering Triller's proffered evidence, the court held

---

[4] Shortly before Triller filed its response to Carnegie's motion for summary judgment, Triller filed a motion for leave to file a limited answer. Triller sought to raise the defenses of novation and illegality, but the court denied the motion in the same order

No. 21-50912

that nothing in the agreements signed by Triller and Carnegie released Triller from its obligations under the Note and none of the declarations reflected that the parties (e.g., Carnegie) intended to release Triller. Thus, the district court granted summary judgment for Carnegie on its claims related to the Note as well. Triller now appeals.[5]

## II.

We review grants of summary judgment *de novo* and apply the same standard applicable to the district court.[6] *Luminant Mining*, 14 F.4th at 379 (quoting *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020)). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A movant is "entitled to a judgment

---

in which it granted summary judgment. The court found that Triller's motion was untimely because it was filed five months after the deadline for amended pleadings under the court's scheduling order. The court also found that Triller had not demonstrated any excusable neglect and that Carnegie would be prejudiced by granting the motion because, while Carnegie was on notice regarding the novation defense because it was raised in Triller's motion to dismiss, Carnegie had no prior notice of the illegality defense.

Concluding that Triller had waived both defenses because it had never filed an answer, *see* FED. R. CIV. P. 8(c), the district court nonetheless elected to address novation because Carnegie had notice of that defense. *See LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) (citing *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013)) (noting district courts' discretion to determine if prejudice militates against addressing a forfeited defense). Neither party contends that the court abused its discretion by reaching Triller's argument on this point.

[5] On appeal, Triller makes no argument related to Carnegie's claim for breach of the ASA or Triller's motion for leave to file a limited answer, so we do not further address these aspects of the district court's judgment. *See Luminant Mining*, 14 F.4th at 378 n.1.

[6] Triller argues that the magistrate judge's report adopted by the district court applied the wrong standard in analyzing its novation defense. Because we review this case *de novo* and will apply the correct standard, it is not necessary to address this issue further.

as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This includes when a nonmovant pleads an affirmative defense but fails to establish it. *Fed. Trade Comm'n v. Nat. Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004) (citing *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 629 (5th Cir. 1992)).

Triller contends that summary judgment was improper because Triller had demonstrated there was a genuine issue of material fact related to novation. This diversity jurisdiction case was filed in Texas, so we apply the substantive law of Texas. *Huynh v. Walmart, Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (citing *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019)). Texas law thus articulates the necessary elements of Triller's affirmative defense and, by extension, determines whether the alleged genuine issues of fact are material to the defense. As we discuss below, Texas's law on novation leads us to focus on the Assignment, as that is the agreement that Triller asserts caused the novation. Because the parties agreed that the Assignment be interpreted using California law, we construe the language of the Assignment accordingly.[7]

## A.

In Texas, a novation can occur in two circumstances: first, where there are "such inconsistent provisions of two contracts that both cannot stand," and second, "when the parties to both contracts intend and agree

---

[7] Triller argues that we should apply California law to determine the elements of its novation defense as well, but California law only bears on our analysis as far as we need to interpret the terms of the Assignment.

that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first." *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953). "To establish a novation, the party must prove: (1) a previous valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract." *Goldman v. Olmstead*, 414 S.W.3d 346, 358 (Tex. App. 2013) (citing *In re B.N.L.-B.*, 375 S.W.3d 557, 562 (Tex. App. 2012)). Notably, "a presumption of an intention to release the first debtor will not arise from the mere taking of the second." *Chastain*, 257 S.W.2d at 424. "[W]hether the taking of a new debtor is intended to operate as a release of the liability of the old, in the absence of an express agreement to that effect, is usually a question of fact, and can only become a question of law when the state of the evidence is such that reasonable minds cannot differ as to its effect." *Id.*

The two contracts at issue here are the Note executed by Triller in favor of Carnegie and the Assignment by Triller to Legacy (as acknowledged by Carnegie). The Note created the original obligations between the parties, but Triller contends that the Assignment superseded it. Because Triller does not argue that the contracts are inconsistent, and because Triller does not contest that it incurred valid obligations under the Note,[8] only the language of the Assignment is relevant to our analysis. And regarding the Assignment, Triller asserts that it absolved Triller of further obligation under the Note, i.e., that the parties intended and agreed to discharge Triller through the Assignment.

---

[8] As observed *supra* in footnote 4, Triller attempted to raise a defense to the Note, i.e., that the Note was illegal (because it imposed an unenforceable penalty). But that defense was not properly pled and is not at issue on appeal.

The parties' arguments center on the third novation element, "the extinguishment of the old contract[,]" *Goldman*, 414 S.W.3d at 358, and whether Triller presented sufficient evidence to demonstrate a genuine dispute of material fact on that point. As noted above, the question is the intent of the parties, and in Texas the best indication of the intent of the parties is the agreement itself. *Murphy Expl. & Prod. Co.–USA v. Adams*, 560 S.W.3d 105, 108 (Tex. 2018). Therefore, we turn to what the Assignment says.

The Assignment contains four relevant provisions. The first is a statement providing that Triller "desires to assign, transfer, and convey the Note in its entirety to" Legacy and that Triller "hereby assigns the Note to [Legacy] . . . subject to all of the obligations set forth in the Note." Next, Legacy "expressly assume[d] all such rights, obligations, liabilities and duties of [Triller] arising with respect to the Note and agree[d] to perform any and all unperformed obligations of [Triller] under and pursuant to the Note[.]" Third, the agreement contains a merger clause stating "[t]his Assignment . . . is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto." Finally, the agreement concludes with a choice of law provision stating that the parties "expressly agree that this Assignment shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California, without regard to its choice of law principles."

Thus, to interpret the text of the Assignment to determine whether it meets the third element of novation under Texas law, i.e., whether it extinguished the old contract embodied by the Note, we utilize California law.

No. 21-50912

## B.

In California, "[t]he fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1212 (Cal. 2003) (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995)). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* (quoting *Waller*, 900 P.2d at 627).[9] California courts direct that the "clear and explicit" meaning of the contract terms, deduced when using the terms in their "ordinary and popular sense," are to be applied, unless the parties used the term "in a technical sense." *Id.*

Our goal then is to determine if words such as "assign," "transfer," or "convey," as used in the Assignment would, in their ordinary usage, indicate the extinction of the obligations carried under the Note, as Triller asserts. And while dictionaries may be useful for determining the ordinary meaning of a term, under California law the role of a court is to "put itself in the position of a layperson" to understand how that layperson would interpret the term. *Id.* at 1214.

## C.

The Assignment is itself a simple document. The actual text of the agreement spans two pages. From the usage of "assign," "transfer," and "convey," the Assignment plainly shows that Triller is giving, or shifting, something to Legacy. *See Assign*, MERRIAM-WEBSTER'S COLLEGIATE

---

[9] California jurisprudence expresses some reservation regarding the "judicial belief in the possibility of perfect verbal expression." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 643 (Cal. 1968). "This belief is a remnant of a primitive faith in the inherent potency and inherent meaning of words." *Id.* at 643-44. This skepticism in California law is reflected in the extrinsic evidence rule outlined *infra*.

No. 21-50912

DICTIONARY (11th ed. 2009) ("to transfer (property) to another esp. in trust for the benefit of creditors"); *Transfer*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("to convey from one person, place, or situation to another; . . . to make over the possession or control of"); *Convey*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("to transfer or deliver (as property) to another esp. by a sealed writing[.]"). That much would be evident to any ordinary reader of the agreement.

But, as the district court observed, nowhere in the Assignment is there any mention of the *extinguishment* of Triller's pre-existing obligations to Carnegie. *See Goldman*, 414 S.W.3d at 358 (noting that "[a] novation occurs if a contract evidences an intention to relinquish and extinguish pre-existing claims and rights of actions); *see also Wells Fargo Bank v. Bank of Am.*, 38 Cal. Rptr. 2d 521, 525 (Cal. Ct. App. 1995) (stating that for a subsequent contract to constitute a novation, "[i]t must '"clearly appear" that the parties intended to extinguish rather than merely modify the original agreement.'" (quoting *Howard v. Cnty. of Amador*, 269 Cal. Rptr. 807, 817 (Cal. Ct. App. 1990))). Based solely on the words of the agreement, no ordinary person would understand that the Assignment necessarily absolved Triller of any further liability to Carnegie.

Triller submits the declarations from Lu, Flock, and Lee and argues that these demonstrate that the parties clearly meant for the Assignment to act as a novation or, at the very least, the declarations demonstrate a genuine issue of material fact regarding the extinguishment of Triller's liabilities under the Note. But these declarations do not bear on the language used in the Assignment. As noted above, nothing in the text of the Assignment indicates a change in the relationship between Carnegie and Triller. Instead, the declarations are evidence provided by Triller that an agreement had been entered into by Carnegie and others to sell Triller free of any debt.

12

In California, when there is a merger clause stating that the agreement is "the final expression of, and contains the entire agreement between, the parties[,]" extrinsic evidence of an alternative or additional agreement or of negotiations or stipulations cannot be used to supplement or contradict the agreement. *See* CAL. CIV. CODE § 1625 ("The execution of a contract in writing . . . supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."); CAL. CIV. PRO. CODE § 1856; *see also Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 398 P.3d 556, 566 (Cal. 2017) (noting that an agreement "contained an integration clause, making it the parties' sole binding agreement in this transaction"); *Dreyfuss v. Union Bank of Cal.*, 11 P.3d 383, 413 n.6 (Cal. 2000) ("The modified loan agreement included a clear integration clause, expressly superseding any and all prior agreements and understandings, whether oral or written, with respect to the terms of the agreement."); *Grey v. Am. Memt. Servs.*, 139 Cal. Rptr. 3d 210, 213 (Cal. Ct. App. 2012) ("This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded." (quoting 2 WITKIN, CALIFORNIA EVIDENCE § 70 (4th ed. 2000))).[10]

Thus, because (1) the plain meaning of the agreement is silent on the extinction of any obligation between Triller and Carnegie, (2) Texas and California both require clear evidence to show that the parties intended to extinguish an earlier contract, *Goldman*, 414 S.W.3d at 358, *Wells Fargo Bank*, 32 Cal. Rptr. 2d at 525, and (3) the agreement's merger clause bars evidence

---

[10] At best, Triller would be entitled to offer extrinsic evidence only if there was an actual ambiguity in the contract, *Pac. Gas & Elec. Co.*, 442 P.2d at 644, but since Triller failed to plead or raise a fact issue on ambiguity, there is nothing further for us to address on this point.

of a contemporaneous or earlier agreement, Triller has failed to demonstrate a genuine issue of material fact regarding whether the Assignment was a novation extinguishing the liability it bore Carnegie in the Note.

## III.

Because Triller failed to raise a material fact issue that substantiated its novation defense, and because Triller does not challenge that the plain text of the Assignment and the Note bind it, the district court properly entered summary judgment on behalf of Carnegie.

AFFIRMED.