# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 20, 2024

Lyle W. Cayce
Clerk

_____

No. 23-50662

_____

U.S. Bank Trust National Association, *as Trustee of* the
Tiki Series IV Trust,

*Plaintiff—Appellee*,

*versus*

Jerry K. Walden, Jr., *also known as* Jerry K. Walden;
Tamatha Walden,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-1188

_____

Before Clement, Graves, and Ramirez, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

An entity that owns and holds a loan agreement, including its note and the beneficiary interest in the security instrument, sought to foreclose on a property after borrowers failed to make required payments on the note; this court entered a judgment for non-judicial foreclosure. Below, the district court denied the borrowers' motion for extension of time, adopted the magistrate judge's report recommending that summary judgment be entered against the borrowers, entered a declaratory judgment, and denied the

No. 23-50662

borrowers' motion for an altered judgment, which was stylized as a motion for a new trial. The borrowers challenged the district court's orders, alleging abuse of discretion and plain error. We conclude that the district court did not abuse its discretion but did err in finding that the entity did not manifest an unequivocal intent to abandon acceleration. Thus, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

On June 15, 2004, Jerry and Tamatha Walden received real property located at 1017 Burleson Street, San Marcos, Texas (the Property) via a Warranty Deed with a Vendor's Lien.[1] Years later, in 2008, the Waldens executed a $316,800 Texas Home Equity Note with a 5.5% annual interest rate payable to Nationstar Mortgage LLC. This Note included a corresponding Texas Home Equity Security Instrument[2] that granted Nationstar, the named beneficiary, a security interest in the Property. Together, the Note and the Security Instrument made up the Loan Agreement.

The Loan Agreement provided that (1) the Waldens were required to pay the Note's principal and interest when due; and (2) that if they failed to do so, or they failed to comply with any of the covenants and conditions of the Security Instrument, the lender could enforce the Security Instrument by selling the Property according to the law and with the provisions set out in the Loan Agreement.

---

[1] This document was recorded in the Official Public Records of Hays County, Texas on June 16, 2004, as Document No. 04017063.

[2] This document was recorded in the Official Public Records of Hays County, Texas on April 18, 2008, as Document No. 2008-80010245.

No. 23-50662

In 2008, Nationstar assigned the Loan Agreement to the Federal National Mortgage Association (Fannie Mae). Fannie Mae then assigned the Loan Agreement to MTGLQ Investors, L.P. and recorded the transfer on May 18, 2017. After the Waldens failed to pay the amount they owed on the Loan Agreement, MTGLQ served a Notice of Acceleration on January 30, 2018.

Then, in 2019, MTGLQ filed suit. In 2020, the district court entered its final judgment and an order authorizing the non-judicial foreclosure of the Property. The Waldens appealed the district court's judgment, which this court affirmed. *MTGLQ Invs., L.P. v. Walden*, 853 F. App'x 957 (5th Cir. 2021) (per curiam), *opinion withdrawn and superseded on denial of reh'g,* No. 20-50944, 2021 WL 4888870 (5th Cir. Oct. 19, 2021) (per curiam).

While the appeal was pending, MTGLQ assigned the Loan Agreement to U.S. Bank.[3] U.S. Bank presently owns and holds the Loan Agreement, including the Note and its beneficiary interest in the Security Instrument.

On August 13, 2021—after this court affirmed the ruling of the district court—U.S. Bank and SN Servicing, its loan servicer, sent a notice of default to the Waldens. The notice of default stated that the Waldens could cure the default by paying $346,060.32—less than the full accelerated amount due under the Loan Agreement. Despite receiving the notice of default, the Waldens still did not pay on the Note.

This court issued a substitute opinion on October 19, 2021. *MTGLQ Invs., L.P. v. Walden*, No. 20-50944, 2021 WL 4888870 (5th Cir. Oct. 19, 2021) (per curiam) (affirming summary judgment, denying rehearing, and

---

[3] The Assignment of Deed of Trust was recorded on May 4, 2021, in the Official Public Records of Hays County, Texas as Document No. 21030450.

denying motion to vacate and dismiss as moot). U.S. Bank then sent the Waldens another notice in November 2021 indicating that the Property would be sold at a foreclosure sale on January 4, 2022.

U.S. Bank filed this suit on December 31, 2021, arguing that it had a right to foreclose pursuant to the final judgment the district court issued and this court affirmed. U.S. Bank filed a motion for summary judgment. On May 17, 2023, a United States Magistrate Judge issued a report and recommendation recommending that the district court grant U.S. Bank's motion for summary judgment. The report and recommendation allowed the parties to file written objections within fourteen days.

On May 31, 2023, the Waldens filed an unopposed motion to extend time to file objections. The district court granted the motion and extended the deadline to June 9, 2023. The day of the deadline, the Waldens filed a second motion to extend time to file objections that was the same in form and substance as the first.

On June 12, 2023, the Waldens filed a corrected motion, acknowledging their error in submitting an identical motion and requesting to extend the deadline again, until June 16, 2023. The district court mooted the June 9th motion and denied the corrected motion.

On June 23, 2023, the Waldens filed a motion for leave with their objections attached. On June 28, 2023, the district court found that there was no good cause to grant the Waldens leave to file their objections, adopted the magistrate judge's report and recommendation, and entered a judgment for non-judicial foreclosure.

On July 26, 2023, the Waldens filed a motion for new trial, which the district court denied on August 10, 2023. This appeal followed.

No. 23-50662

## STANDARD OF REVIEW

We "review a district court's grant or denial of an extension of time under Federal Rule of Civil Procedure 6(b) for an abuse of discretion." *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 524 (5th Cir. 2021) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)); Fed. R. Civ. P. 6(b). The same is true of a district court's denial of motions for a new trial. *Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018) (citing *United States v. Sertich*, 879 F.3d 558, 562 (5th Cir. 2018)).

"When a party who is warned of the requirement to file timely objections to a magistrate judge's report and recommendation fails to file any such objections, and the magistrate judge's factual findings and legal conclusions are accepted by the district court, our review is for plain error." *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017). "When, however, the district court undertakes an independent review of the record, our review is *de novo*, despite any lack of objection." *Id.* (citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005)).

## DISCUSSION

I.  *The district court did not abuse its discretion by denying the Waldens' motion to extend time to file objections to the magistrate judge's report and recommendation.*

The trial court's denial of the Waldens' motion to extend time to file objections to the magistrate judge's report and recommendation was not an abuse of discretion. Under Federal Rule of Civil Procedure 72, a party has 14 days to file objections to the proposed findings and recommendations of the magistrate judge. Fed. R. Civ. P. 72. The Waldens did not file their objections in 14 days. Instead, they filed a motion for an extension.

5

No. 23-50662

District courts have broad discretion in managing their dockets and deadlines. *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 741 (5th Cir. 2010) (per curiam). Before the original deadline expires, a court *may* extend time for a party to act if there is good cause. Fed. R. Civ. P. 6(b)(1)(A). Using its discretion, the district court extended the Waldens' deadline to file their objections until June 9, 2023. However, the Waldens did not meet that deadline.

Instead, on June 9th, the Waldens requested a second extension with a motion that was similar in form *and* substance to their first extension request. This extension request violated Western District of Texas Local Rule CV-7(g) because the Waldens failed to confer with opposing counsel, despite sufficient time before filing to do so. W.D. Tex. Civ. R. 7(g).

Acknowledging their substantive and procedural error, the Waldens filed a corrected motion on June 12, 2023, three days after the deadline for the extension. Under Federal Rule of Civil Procedure 6, the court may for good cause extend the time after it has expired "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

In assessing whether a party failed to act because of excusable neglect, a district court weighs the following factors: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Employing these factors, the district court denied the request, noting that "when [it] alerted counsel to the error [in filing the same motion], counsel replied that the motion contained the correct dates, rather than first checking to determine whether a mistake had been made." The court also

6

considered that the Waldens did not conference with U.S. Bank prior to the motion being filed on June 9th, so U.S. Bank did not have sufficient time to note opposition. Taken together, the district court concluded the Waldens did not show good cause and denied their motion.

Given the imprudent reason for the delay, which was clearly in the Waldens' control, this denial was well within the district court's discretion pursuant to Federal Rule of Civil Procedure 6(b)(1)(B). Therefore, the district court did not abuse its discretion.

II.    *The trial court did not abuse its discretion by denying the Waldens' motion for leave to file objections to the magistrate judge's report and recommendation.*

The Waldens filed the motion for leave to file objections, like the second motion to extend time, without conference with U.S. Bank in violation of Western District of Texas Local Rule CV-7(g). The district court denied the motion because it did not find good cause.

The Waldens argue that the denial was based on an error—the incorrect date on the motion. They reason that this error established good cause to grant their motion for leave. But the Waldens are mistaken.

Because the Waldens raised this issue *after* the final judgment, we analyze the denial of the motion for leave under Federal Rule of Civil Procedure 60(b). A district court does not abuse its discretion by denying a Rule 60(b) motion when "the proffered justification for relief" is the mistake or carelessness of the party's own counsel. *Lozano v. Donna Indep. Sch. Dist.*, 648 F. App'x 412, 413 n.2 (5th Cir. 2016) (quoting *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356–57 (5th Cir. 1993)). The Waldens, by admission, acknowledged that the motion was incorrect because of their mistake. Thus, the district court's denial was not an abuse of discretion.

III.    *Upon de novo review, we conclude that U.S. Bank owned the loan and had standing, but it abandoned acceleration on the loan via a notice that unequivocally manifested its intent to abandon.*

In its order denying the motion for the new trial, the trial court noted that the Waldens' objections were not timely filed. This means it could have performed plain error review. *Alexander*, 875 F.3d at 248. Instead, the district court acknowledged that "even considering their objections along with Plaintiff's response, under a de novo standard, the [district court] agrees" with the magistrate judge's report and recommendation.

As the district court indicated it undertook an "independent review of the record, our review is *de novo*," *id.*, and we "apply the same standard applicable to the district court." *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022).

"A 'court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). "A movant is 'entitled to a judgment as a matter of law [when] the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id.* (alterations in original) (quoting *Terral River Serv., Inc. v. SFC Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021)).

A.    *The ownership of the loan/standing*

The Waldens argue that U.S. Bank does not have standing to foreclose on the loan because MTGLQ improperly assigned the loan to U.S. Bank. According to the Waldens, Fannie Mae did not have authority to transfer the Loan Agreement to MTGLQ because the Federal Housing Finance Agency (FHFA) was Fannie Mae's receiver. Therefore, the argument goes,

MTGLQ did not transfer any interest in the Loan Agreement to U.S. Bank because it never had an interest to transfer.

The Housing and Economic Recovery Act of 2008, 12 U.S.C. § 4501 *et seq.*, "created the [FHFA], 'an independent agency' tasked with regulating [Fannie Mae and Freddie Mac] and, if necessary, stepping in as their conservator or receiver." *Collins v. Yellen*, 594 U.S. 220, 226–27 (2021) (citing 12 U.S.C. §§ 4511, 4617). As conservator or receiver of Fannie Mae, the FHFA may "transfer or sell any asset or liability of the regulated entity in default, and may do so without any approval, assignment, or consent with respect to such transfer or sale." 12 U.S.C. § 4617(b)(2)(G). The role of the FHFA, as conservator, is to oversee Fannie Mae, not to control daily operations. *See Collins*, 594 U.S. at 229–30. Fannie Mae, then, continues to operate as a business corporation, including the ability to transfer assets, although the FHFA retains ultimate authority. *See Conservatorship*, FHFA, https://www.fhfa.gov/conservatorship (last visited December 18, 2024)); 12 U.S.C. § 1719(a)(2).

Thus, when Fannie Mae assigned the Loan Agreement to MTGLQ, it was well within its statutory authority to do so, and it properly transferred the interest. Likewise, MTGLQ properly transferred the interest in the Loan Agreement to U.S. Bank, making U.S. Bank the owner and holder of the loan.

The Waldens also argue that U.S. Bank did not suffer a concrete injury. This is incorrect. Because U.S. Bank owns and holds the loan that the Waldens defaulted on, it has suffered a concrete injury in the form of financial loss. *See Texas v. United States*, 787 F.3d 733, 748 (5th Cir. 2015) ("It is well established that a financial loss generally constitutes an injury."). Further, U.S. Bank's concrete injury is traceable to the Waldens' nonpayment and is redressable through foreclosure. Therefore, U.S. Bank has standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("To establish

Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010))).

The Waldens also argue that U.S. Bank's request for a declaratory judgment is not a sufficient injury-in-fact to confer standing because it asks this court to issue an advisory opinion.

The Waldens are correct that a court "cannot render an advisory opinion on hypothetical or abstract facts." *Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918, 920 (5th Cir. 1970). But declaratory judgments are not advisory opinions based on hypothetical or abstract facts. Instead, declaratory judgments permit courts to "declare the rights and other legal relations of any interested party" where an "*actual controversy*" exists. 28 U.S.C. § 2201(a) (emphasis added).

U.S. Bank requests a declaratory judgment that the August 13, 2021 notice it sent to the Waldens did not affect the final judgment in the first suit. The Waldens disagree that is the case. As these parties have opposing interests that affect their respective rights and obligations, an actual controversy exists. This controversy requires judicial resolution to determine if U.S. Bank can foreclose on the Property, making the dispute ripe. Thus, U.S. Bank is not requesting an advisory opinion.

Taken together, we conclude that U.S. Bank owns the loan and had standing.

B. *The status of acceleration of the loan*

The magistrate judge's report and recommendation, which was adopted by the district court after de novo review, determined that U.S. Bank did not abandon acceleration of the loan. The Waldens, however, argue that

the August 13, 2021 notice was an "unequivocal express notice of abandonment of any prior acceleration." U.S. Bank contends, and the district court agreed, that the notice was inadvertently sent and that the notice, by itself, did not manifest an unequivocal intent to abandon acceleration as U.S. Bank later sent the Waldens another notice of foreclosure sale on November 22, 2021. However, binding precedent forecloses that conclusion.

"The acceleration of a note can be abandoned 'by agreement or other action of the parties.'" *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015) (quoting *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.–Houston [1st Dist.] 2012, no pet.)). "Texas courts have framed the issue of abandonment of acceleration by reference to traditional principles of waiver." *Id.* at 105. Under Texas law, "[t]he elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Thompson v. Bank of America Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008)). "The central element is intent, which must be unequivocally manifested." *Id.*

In *Boren*, this court held that a "notice unequivocally manifested an intent to abandon" acceleration when it "informed [the party] that the total amount necessary to bring their loan current was the amount due under the original terms of the Note and that the bank would accelerate the maturity date of the loan *if* the [party] failed to pay [the amount]." 807 F.3d at 106 (emphasis added).

With this in mind, we look at U.S. Bank's notice to the Waldens, which stated:

> To the extent you have received demand letters with intent to accelerate the obligations under the above subject Note and any notice of acceleration of said Note prior to the date of this demand letter, be advised that **any such demands or notices of acceleration have been withdrawn, cancelled, and abandoned**.

(emphasis omitted in part). This notice expressly withdraws, cancels, and abandons any demands or notices of acceleration, and provides the Waldens with the "opportunity to avoid foreclosure."[4] *Boren*, 807 F.3d at 106.

*Boren* is unequivocally clear that a written notice constitutes intent to abandon acceleration under Texas Civil Practice and Remedies Code § 16.038.[5] *Id.*; *accord Jatera Corp. v. US Bank Nat'l Ass'n*, 917 F.3d 831, 835

---

[4] What's more, the opportunity to avoid foreclosure for the Waldens is less stringent than of the mortgagees in *Boren* as it is not premised on the condition that the Waldens pay the *full* amount.

[5] U.S. Bank cites *Lyons v. Select Portfolio Servicing Inc.*, 748 F. App'x 610 (5th Cir. 2019) (per curiam) for the proposition that a post-acceleration statement that identifies the arrearage the borrower can pay to avoid foreclosure will not abandon acceleration if the lender persists in its efforts to foreclose. But *Lyons* is inapposite because it is distinguishable. As *Lyons* makes clear, the key difference between cases like *Lyons* and cases like *Boren* is that in *Boren* "a mortgagee accelerated a loan under the terms of the note and deed of trust but later 'manifested an intent to abandon [the] previous acceleration.'" *Lyons*, 748 F. App'x at 611 (alteration in original) (quoting *Boren*, 807 F.3d at 106). In *Lyons*, "the Bank never wavered from accelerating the loan." *Id.* Unlike the mortgagee in *Lyons* and like the mortgagee in *Boren*, U.S. Bank did not merely send a "monthly mortgage statement and reinstatement notice [that] referenced different amounts from the original loan amount." *Id.* at 611–12. Instead, it sent a document with clear language demonstrating abandonment, i.e., "any such demands or notices of acceleration have been withdrawn, cancelled, and abandoned . . . ."

Insofar as the *Boren* and *Lyons* holdings present any tension in the case law, "we are bound by this Circuit's rule of orderliness. Under our rule of orderliness, one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court." *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (cleaned up). "Under our rule of orderliness, the earlier published decisions control over the later unpublished ones."

(5th Cir. 2019); *Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318 (5th Cir. 2016); *cf. Sexton v. Deutsche Bank Nat'l Tr. Co.*, 731 F. App'x 302, 308 (5th Cir. 2018) (per curiam) ("Our court has consistently held a lender demonstrates abandonment where the lender, after accelerating a debt, sent subsequent notices of default seeking only the amount overdue and warning borrowers that, in the event of failure to cure, the debt would be accelerated.").

Because the district court's grant of summary judgment is contrary to controlling circuit precedent, we REVERSE the district court's order granting summary judgment, VACATE the judgment it entered, and REMAND the matter to the district court for further proceedings consistent with *Boren*.

## C. *The lender's ability to rescind/abandon acceleration*

The Waldens argue that U.S. Bank is permitted to abandon acceleration despite this court's judgment in the first suit because it was a "foreclosure pursuant to the security instrument—i.e., power of sale," making it a non-judicial foreclosure. This court's judgment in the first suit, argue the Waldens, was based upon the state of acceleration but the acceleration was subsequently rescinded. The Waldens contend that when acceleration is abandoned, the lender must seek a new order authorizing exercise of power of sale or judicial foreclosure. U.S. Bank argues, in the alternative, that even if the prior acceleration was abandoned, summary judgment in its favor must be affirmed because it conclusively established that it is entitled to a second order authorizing foreclosure. On remand, we direct the district court to address these arguments.

---

*Poole v. City of Shreveport*, 13 F.4th 420, 426 (5th Cir. 2021). Thus, even if *Lyons* and *Boren* are in conflict—and the court is not convinced they are—*Boren* controls.

No. 23-50662

\*\*\*

We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.