# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2026

Lyle W. Cayce
Clerk

———————

No. 24-30799

———————

BY Equities, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Carver Theater Productions, L.L.C.; Eugene Oppman,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-1290

———————————————————

Before Graves and Duncan, *Circuit Judges*.[*]

Per Curiam:[†]

The appeal arises from a suit to collect on a matured promissory note executed by Carver Theater Productions, L.L.C. and personally guaranteed by its principal, Eugene Oppman. Carver defaulted, but the lender, First NBC Bank (FNBC), later failed. BY Equities, L.L.C. acquired the debt and

———————————————

[*] Judge Dennis was a member of the panel that heard this case but took inactive status after the case was submitted. This matter is decided by a quorum under 28 U.S.C. § 46(d).

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

sought to enforce Carver's unpaid obligation and Oppman's guaranty. Defendants conceded the nonpayment but countered that FNBC executives represented that the loan was to be satisfied exclusively from state-tax-credit proceeds and that BY Equities "manufactured" the default. The district court concluded that neither theory created a triable defense under the *D'Oench, Duhme* doctrine,[1] 12 U.S.C. § 1823(e)(1), or Louisiana law, and entered judgment for BY Equities. For the reasons that follow, we AFFIRM.

I

In 2012, Carver undertook the renovation of the historic Carver Theater in New Orleans, Louisiana, through a multilayered tax-credit financing structure arranged by FNBC and two FNBC-affiliated special-purpose entities. As part of that arrangement, Carver executed a November 2012 "bridge" loan promissory note supported by a personal guaranty from Oppman and a Uniform Commercial Code (UCC) security interest in Carver's movable assets. Six months prior, in May 2012, then-FNBC executive Robert Calloway prepared an internal credit memorandum, which explained that the loan was designed "to bridge the cash receipts" from anticipated federal and state tax-credit proceeds generated by the renovation. The memorandum identified tax-credit equity as the primary repayment source while preserving the liquidation of Carver's collateral and the Oppman guaranty as secondary sources.

Oppman then executed a commercial guaranty in November 2013, where he "absolutely and unconditionally" guaranteed the full payment of Carver's indebtedness to FNBC, whether then existing or later arising, and agreed that any assignee of the indebtedness would hold the same rights and remedies as the bank. FNBC likewise perfected its security interest through

---

[1] *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

No. 24-30799

UCC filings, rendering the lien effective against third parties.

At issue here is a January 2015 bridge loan that refinanced the November 2012 debt. On January 28, 2015, Carver executed a promissory note in the amount of $1,590,278 payable to FNBC. As with the 2012 bridge loan, Calloway prepared another internal credit memorandum dated January 26, 2015. This memorandum reiterated the purpose of the financing—to "bridge" the period before state-tax-credit receipts became available for repayment—and again noted Oppman's personal guaranty, the UCC security interest in Carver's assets, and the two repayment sources. Carver also executed a commercial security agreement on January 29, 2015, granting FNBC and its assignees a continuing security interest in designated categories of personal property.

The January 2015 note set a maturity date in May 2015 but Carver and FNBC twice extended it. Their first amendment increased the principal amount and extended maturity to February 1, 2016. Their second further extended maturity to December 2016. Carver admits "it did not pay the full balance of the Note" at maturity and remained in default.

FNBC collapsed amidst a banking fraud scandal in April 2017. A Louisiana state court ordered the closure of FNBC and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver, vesting it with title to FNBC's assets, including the 2015 bridge note, Carver's security agreement, and Oppman's guaranty. The FDIC assigned the indebtedness to OSK VII, L.L.C., which in turn assigned it to BY Equities.

BY Equities purchased the indebtedness in December 2019 at its then-outstanding balance. Carver made no payments thereafter, and interest continued to accrue at the contractual rate of seven percent.

No. 24-30799

BY Equities filed suit to collect the unpaid balance of the 2015 bridge note and enforce both Carver's security agreement and Oppman's continuing guaranty.

Carver and Oppman raised two principal defenses: (1) that FNBC represented that the loan would be repaid solely from tax-credit proceeds; and (2) that BY Equities had "manufactured" a default through improper conduct surrounding the loan's assignment. The parties filed cross-motions for summary judgment.

The district court granted BY Equities's motion and denied Carver and Oppman's. The court found the "tax-credit-only" defense barred by the *D'Oench, Duhme* doctrine and its statutory counterpart, 12 U.S.C. § 1823(e)(1), which preclude borrowers from invoking unrecorded side agreements to defeat collection on bank assets. The court also rejected Carver and Oppman's "manufactured default" theory, finding no support in the summary-judgment record. The court entered a Federal Rule of Civil Procedure 54(b) money judgment in BY Equities's favor. Carver and Oppman subsequently sought relief under Federal Rule of Civil Procedure 60(b)(2), invoking "newly discovered" FDIC materials received following a Freedom of Information Act (FOIA) request that they claimed created a fact issue under *D'Oench, Duhme* and § 1823(e)(1).

The court denied Carver and Oppman's motion, and this timely appeal followed.

II

Our review is de novo. *Carnegie Techs., L.L.C. v. Triller, Inc.*, 39 F.4th 288, 293 (5th Cir. 2022). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ibid.* (quoting Fed. R. Civ. P. 56(a)). "A movant is 'entitled to a judgment as a matter of law [when] the

4

nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Ibid.* (alterations in original) (quoting *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021)). "This includes when a nonmovant pleads an affirmative defense but fails to establish it." *Ibid.* (quoting *FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004)).

We review the denial of Rule 60(b)(2) relief for abuse of discretion. *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (citing *Edwards v. City of Hou.*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)). "To succeed on a motion brought under 60(b)(2) based on newly discovered evidence, the movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) 'the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment.'" *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 771 (5th Cir. 1995) (quoting *N.H. Ins. v. Martech USA, Inc.*, 993 F.2d 1195, 1200–01 (5th Cir. 1993)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling*, 396 F.3d at 638 (citation omitted).

## III

Carver and Oppman argue the district court erred by finding (1) the *D'Oench, Duhme* doctrine and its statutory counterpart, 12 U.S.C. § 1823(e)(1), precluded their fraudulent inducement affirmative defense; and (2) they failed to establish a genuine dispute of material fact that BY Equities falsely "manufactured" a default in the bridge loan. We address and reject each argument in turn.

## A

In *D'Oench, Duhme & Co. v. FDIC*, the Supreme Court held that the FDIC, acting as receiver for a failed bank, may enforce facially valid

promissory notes notwithstanding undisclosed side agreements between the bank and the borrower that purport to alter the terms of the obligation. 315 U.S. 447, 459–62 (1942). That decision gave rise to the *D'Oench, Duhme* doctrine, an estoppel rule that bars borrowers and guarantors from defeating the enforcement of bank assets by invoking unwritten or unrecorded understandings that are not reflected in the bank's official records. *See Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248 (5th Cir. 1990).

Congress codified the doctrine in 12 U.S.C. § 1823(e), which renders any agreement tending to diminish or defeat the value of a bank asset unenforceable against the FDIC—and those who succeed to its interests—unless four requirements are met. The agreement must be: (1) in writing; (2) executed contemporaneously by both the bank and the obligor; (3) approved by the bank's board or loan committee as reflected in its minutes; and (4) maintained continuously as an official record of the institution. 12 U.S.C. § 1823(e)(1)(A)–(D). These statutory requirements are "certain" and "categorical," leaving no room for equitable exceptions based on informal understandings or asserted expectations. *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir. 1989).

Before their post-judgment Rule 60(b) motion, Carver and Oppman relied on three categories of evidence to support their affirmative defense of fraudulent inducement, *i.e.*, FNBC executives Ryan and Calloway misrepresented that state and federal tax credits would fully satisfy the 2015 bridge loan.

They pointed to (1) Oppman's affidavit recounting alleged oral assurances; (2) Ryan's deemed admissions concerning those alleged statements; and (3) the 2012 internal FNBC credit memorandum.

None overcomes the bar imposed by *D'Oench, Duhme* and § 1823(e). Oppman's affidavit and Ryan's admissions fail at the threshold. Oppman

attests that, at a meeting preceding execution of the 2015 note, Ryan represented that the loan "would not have to be paid back by Carver Theater Productions," but instead would be "fully fund[ed]" by tax credits. Ryan's deemed admissions confirm that such oral statements were made. But even taken at face value, this evidence establishes only an unwritten understanding that contradicts the express terms of a facially unconditional promissory note. Such proof is precisely what *D'Oench, Duhme* and § 1823(e) forbid. *Campbell Leasing, Inc.*, 901 F.2d at 1248.

The 2012 credit memorandum fares no better. Although it is a bank record prepared and approved by FNBC officers, it is an internal credit assessment—not an agreement executed by Carver or Oppman. Defendants contend that stray pen marks near Oppman's name, largely obscured by FDIC redactions, create a genuine dispute as to whether Oppman signed the memorandum. That contention appears for the first time in Defendants' reply in support of their cross-motion for summary judgment and is unsupported by any competent evidence. No affidavit, deposition testimony, declaration, or admission substantiates the claim. Even Oppman's own affidavit is silent on the point. At most, Defendants offer speculation insufficient to create a triable issue of fact. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 661 (5th Cir. 2016).

Independent of any execution defect, the 2012 credit memorandum fails for two additional reasons. First, it was prepared more than two years before the 2015 bridge loan and therefore was not executed contemporaneously with the acquisition of the asset at issue, as § 1823(e) requires. *See FDIC v. Va. Crossings P'ship*, 909 F.2d 306, 309–10 (8th Cir. 1990) (holding two memoranda dated March and July 1983 were not executed contemporaneously with a December 1983 loan transaction). Second, the memorandum does not support the "tax-credits-only" limitation

Defendants assert. While it identifies tax-credit proceeds as the primary source of repayment, it expressly preserves guarantor support and liquidation of collateral as secondary sources and references both Oppman's guaranty and Carver's pledged assets. Those terms are inconsistent with any agreement relieving Defendants of personal liability and foreclose any attempt to graft such a limitation onto an otherwise unconditional obligation.

Defendants' final effort to avoid judgment rests on a Rule 60(b)(2) motion invoking a 2015 internal FNBC credit memorandum first produced after summary judgment. The district court did not abuse its discretion in denying that motion. Relief under Rule 60(b)(2) requires both reasonable diligence and evidence that would have altered the outcome. Defendants satisfied neither.

Defendants produced the 2015 credit memorandum nearly four years into the litigation and only after the district court had entered judgment. Although they characterized the memorandum as "newly discovered," their FOIA request was not submitted until months after BY Equities moved for summary judgment and weeks before the court ruled. Defendants offered no adequate explanation for this delay, instead asserting that they believed earlier FDIC materials were sufficient. But the district court had repeatedly made clear that only a writing compliant with *D'Oench, Duhme* and § 1823(e)(1) could support their theory. Rule 60(b)(2) does not permit a party to revisit final judgments to correct strategic or investigative omissions. *See Hesling*, 396 F.3d at 640.

Nor would the 2015 credit memorandum have changed the result. Assuming *arguendo* it was executed contemporaneously with the 2015 bridge loan,[2] there is no competent evidence that it was executed by Oppman or

---

[2] We acknowledge there is disagreement among the circuits regarding how strictly

otherwise constituted an agreement between bank and borrower. As with the 2012 credit memorandum, Defendants rely on only speculation drawn from stray pen marks obscured by FDIC redactions. And like its predecessor, the 2015 memorandum expressly preserves guarantor support and liquidation of collateral as secondary repayment sources—terms inconsistent with the asserted "tax-credits-only" limitation.

In sum, Defendants' evidence—whether presented at summary judgment or post-judgment—fails as a matter of law to satisfy *D'Oench, Duhme* or § 1823(e)(1) and cannot establish a genuine dispute of material fact on their fraudulent inducement affirmative defense.

B

Defendants also contend that a genuine dispute of material fact exists regarding whether BY Equities "manufactured" a default in the 2015 bridge loan by interfering with efforts to unwind the broader tax-credit financing structure and by acquiring the note from OSK through allegedly improper means. The district court correctly rejected that theory because it is foreclosed by undisputed chronology, settled principles of Louisiana assignment law, and the absence of competent, material evidence.

---

to apply the "contemporaneous" requirement. *Compare Dimuzio v. Resol. Tr. Corp.*, 68 F.3d 777, 783 n.5 (3d Cir. 1995) ("[A]ny 'agreement' that is not entered into at the same time as the acquisition of the asset fails to meet the contemporaneous requirement of § 1823(e)(2)."), *with Resol. Tr. Corp. v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 798 (9th Cir. 1993) ("[W]e cannot say as a matter of law that a period of between two and three months under these circumstances rendered the Commitment Letter not contemporaneous."); *see also FDIC v. Manatt*, 922 F.2d 486, 489 n.4 (8th Cir. 1991) ("We doubt that Congress intended that section 1823(e)(2)'s contemporaneousness requirement would defeat a valid accord and satisfaction entered into by a bank. Valid accord and satisfaction agreements are never contemporaneously executed with the initial documents incurring the debt[.]").

The chronology alone defeats Defendants' claim. The bridge note matured on December 5, 2016, and Carver concedes it did not pay the balance due. FNBC failed in April 2017; the FDIC assigned the note to OSK later that year, and OSK assigned it to BY in December 2019. By the time BY Equities acquired the note, the default had existed for nearly three years. As the district court correctly observed, a purchaser of a note in 2019 cannot "manufacture" a default that indisputably occurred in 2016.

Louisiana law also independently forecloses Defendants' interference theory. A creditor may freely assign its rights, *see* LA. CIV. CODE ANN. art. 2642, and negotiable instruments are routinely sold on the secondary market. Defendants do not dispute that OSK was entitled to sell the note. Nor do they identify any evidence that they tendered payment or attempted to acquire the note themselves and were rebuffed. The record instead reflects an ordinary arm's-length transaction in which BY Equities agreed to pay OSK's asking price for a defaulted note. Allegations that BY Equities applied "pressure" or paid "full price" does not transform a lawful assignment into actionable misconduct.

Defendants' alternative theory—that BY Equities prevented an "unwind" of the tax-credit financing structure that supposedly would have satisfied the bridge loan—fails for similar reasons. The tax-credit arrangement used to finance the Carver Theater renovation involved FNBC-affiliated entities that issued tax-credit financing through two Qualified Low-Income Community Investment (QLICI) notes secured by the theater property, along with a separate leverage loan under which Carver held a receivable later pledged as collateral for the bridge note at issue here. The "unwind" Defendants invoke arose under a put and call agreement between Carver and the tax-credit investment entity, which afforded Carver a contractual right to force an unwind by exercising a put option. Defendants cite no evidence that they ever exercised that right, and the emails on which

they rely show only BY Equities's counsel inquiring about enforcement rights—not any effort to obstruct an unwind.

Regardless, even a completed unwind would not have extinguished the 2015 bridge note. Defendants acknowledge that, at the conclusion of the unwind, Carver would have held the first QLICI note, which would have become additional collateral under the existing security agreement. That outcome would not have discharged Carver's unconditional repayment obligation on the matured bridge loan; it would merely have altered the composition of the collateral securing it. Because Defendants neither invoked the contractual mechanism they identify nor show that an unwind would have satisfied the note, the theory cannot create a genuine dispute of material fact.

Nor does Louisiana law convert these allegations into a defense to liability. Louisiana Civil Code article 2003 limits the circumstances where a lender's misconduct or bad faith prevents him from recovering the outstanding balance of a loan from a borrower. Importantly, under that article, "an obligor cannot establish an obligee has contributed to the obligor's failure to perform unless the obligor can prove the obligee itself failed to perform duties owed under the contract." *Lamar Contractors, Inc. v. Kacco, Inc.*, 2015-1430 (La. 5/3/16), 189 So. 3d 394, 398. Here, the 2015 bridge loan is undisputedly a negotiable instrument, meaning it is "an *unconditional* promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order." LA. REV. STAT. ANN. § 10:3-104(a) (emphasis added). BY Equities's only obligation under the 2015 bridge note is to accept payment. Defendants do not allege—because they cannot—that BY Equities refused payment or otherwise failed to perform under the note.

Reduced to its essentials, Defendants' "manufactured default" theory rests on speculation layered atop an undisputed default and a lawful

11

No. 24-30799

post-default assignment. That is insufficient to create a genuine dispute of material fact, and the district court properly rejected the defense.

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.